IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

| | | |
|---|---|---|
| ENSIDA ENERGY AFS, LLC, | ) | |
| d/b/a ENSIDA ENERGY, | ) | |
| a Delaware Limited Liability Company, | ) | CIVIL ACTION NO. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANILO GARDI, ROBERT GERBER, | | |
| JOSEPH MARCELLINO, KYLE A. | | |
| MOWITZ, ENSIDA ENERGY | | |
| CORPORATION, a Florida corporation, | | |
| ENSIDA PARTNERS, LLC, a Florida | | |
| Limited Liability Company, and | | |
| IMPERIUM BLUE CAPITAL PARTNERS, | | |
| LLC, a Georgia Limited Liability Company. | | |
| | | |
| Defendants. | | |

_____

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER
PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, SPECIFIC
PERFORMANCE, DECLARATORY JUDGMENT AND DAMAGES**

Plaintiff Ensida Energy AFS, LLC, d/b/a Ensida Energy ("**Plaintiff**" or "**Ensida Energy**")

by and through counsel, and pursuant to Federal Rule of Civil Procedure 65 and 28 U.S.C. § 2202,

hereby files its Verified Complaint for Temporary Restraining Order, Preliminary and Permanent

Injunctive Relief, Declaratory Judgment, Specific Performance and Damages, showing as follows:

**JURISDICTION AND VENUE**

1.      This is an action for temporary restraining order, preliminary and permanent

injunctive relief, specific performance, declaratory judgment, and/or damages.

-1-

2.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States including its claims under 15 U.S.C. § 1125, 18 U.S.C. § 2511, and 18 U.S.C. § 1836(b)(1).   Further, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper before this Court because substantial part of the events or omissions giving rise to the claims occurred, and/or a substantial part of the property that is the subject of this action is situated, in Broward County, Florida.

## PARTIES

4.      Plaintiff is a Delaware limited liability company which was created on June 29, 2017, and duly authorized and registered to transact business in the state of Florida, with its principal place of business in Broward County, Florida.

5.      The members of Plaintiff are Troy Eakins, ("**Eakins**") a Florida resident, the majority member and managing member, and Defendant Danilo Gardi ("**Gardi**"), a Florida resident, a minority member, and Plaintiff's former Chief Technical Officer.

6.      The Plaintiff was created for all purposes allowed by law, and for the ownership and operation of a business engaged in the design, manufacture, marketing, distribution, and sale of alternative natural gas fuel systems, including for the automotive and transportation industry (the "**System**"), along with all software, know-how, and all other technology constituting the proprietary System ("**the Technology**"), and as otherwise set forth in the June 29, 2017, Initial Operating Agreement.

7.      At all times material, Defendant Robert Gerber ("**Gerber**") was and is a Florida resident and was Plaintiff's Director of National Sales.

-2-

8.      At all times material, Defendant Joe Marcellino ("**Marcellino**") was and is a Florida resident and was Plaintiff's agent and/or representative.

9.      At all times material, Defendant Ensida Energy Corporation ("**EEC**"), was and is a Florida corporation, with a principal place of business in Stuart, Florida, and which was authorized to and did conduct business in the state of Florida.

10.     At all times material, Defendants Gardi, Marcellino, and Gerber were the sole owners of EEC.

11.     At all times material, Defendant Ensida Partners, LLC, ("**Ensida Partners**") was and is a Florida limited liability company.  Upon information and belief, Ensida Partners was formed by Defendant Marcellino, its sole managing member and/or agent, who is a Florida resident.

12.     At all times material, Defendant Kyle A. Mowitz ("**Mowitz**") was and is a Florida resident and otherwise committed tortious acts in the state of Florida as set forth more fully below.

13.     At all times material, Defendant Imperium Blue Capital Partners, LLC ("**Imperium**") was and is a Georgia limited liability company authorized to and/or conducting business in the state of Florida.

14.     At all times material, Imperium acted by and through its employee, agent, and/or authorized representative Mowitz and is vicariously liable for all acts, omissions, and/or tortious conduct of Mowtiz committed within the course and scope of his agency and/or employment with Imperium as set forth herein.

## GENERAL ALLEGATIONS

15.     In early 2017, Defendants EEC, Gardi, Gerber, and Marcellino were in need of significant funding and were depleted of funds to operate their business.

16.     Defendant Mowitz, a venture capitalist and investor working for Imperium, declined to invest in Defendants EEC, Gardi, Gerber, and Marcellino; however, he introduced them to Eakins.

17.     In early 2017, Defendant Mowitz, as an agent, employee, and/or representative of Imperium, contacted Eakins for the purpose of introducing Eakins to Defendants EEC, Gardi, Gerber, and Marcellino, all of whom collectively were seeking significant financial investment and backing for the System.

18.     In or around March 2017, Eakins communicated with Mowitz concerning the due diligence investigation that Eakins needed to conduct as a prerequisite to Eakins and/or Plaintiff making any investment in or acquisition of EEC or of the rights to the EEC's then-existing intellectual property and technology.

19.     On or about May 11, 2017, Defendants EEC, Gardi, Gerber, and Marcellino provided information to Eakins in furtherance of Eakins' due diligence investigation.   Included in the in the information provided were, among other things, financial statements and a "Private Placement Memorandum" discussing EEC's background, mission, its intellectual property, technology, business model, and financials, including EEC's debts and liabilities.   Defendant Mowitz was copied on that May 11, 2017 transmittal of information.

20.     Based upon representations made by Defendants EEC, Gardi, Gerber, and Marcellino in those disclosures to Eakins, EEC was formed in 2011 to develop and procure EPA

-4-

certifications (and similar protections in other countries) for the System and to sell the System, which was novel and unique, in North America and other markets worldwide.

21.     The preliminary formulation of EEC's then-existing intellectual property and technology was developed by Defendant Gardi for his wholly owned companies Ensida R&D, LLC and EuroAmerican Engineering, LLC.

22.     Defendants EEC, Gardi, Gerber, and Marcellino represented to Eakins that Defendant EEC had acquired and owned all ownership rights to the relevant intellectual property and technology that had been developed at that time by Defendant Gardi related to the System and then-existing technology.

23.     At the time Defendants EEC, Gardi, Gerber, and Marcellino approached Eakins, the intellectual property and technology owned by EEC and/or Defendants had extremely limited marketability and was not certified by the EPA in connection with sought-after markets, and Defendants were in need of additional funding to further develop and refine their existing intellectual property and technology in order to create a marketable, commercially viable and saleable product, system, and technology.

24.     On or about June 3, 2017, Eakins provided a Letter of Intent, outlining the terms of the prospective transaction whereby Plaintiff would acquire all of EEC's then-existing assets, namely, its then-existing intellectual property, and all other assets of EEC which Plaintiff would further develop.   As part of the proposed transaction, Plaintiff would acquire all other ownership interest and rights that any other persons or entities, including Gardi, Gerber, and Marcellino, had or may have had in EEC's then-existing intellectual property.

25.     The June 3, 2017, Letter of Intent states that the material assumptions of the prospective transaction included the fact that Defendants Gardi, Marcellino, and Gerber were the sole owners of EEC and that EEC was the sole owner of all of its intellectual property and technology to be acquired by Plaintiff.

26.     The Letter of Intent was signed by Defendants Gardi, Marcellino, and Gerber on behalf of EEC on June 3, 2017.

27.     The Letter of Intent further states that Defendants Gardi, Gerber, and Marcellino would be allocated up to 40% of Plaintiff's membership shares following the satisfaction of Plaintiff's debts and Eakins' initial financial investment, inclusive of interest, among other terms to be agreed upon by the parties.

28.     On or about June 14, 2017, Eakins provided an Asset Purchase Agreement to Defendants EEC, Gardi, Gerber, and Marcellino further outlining the terms of the parties' agreement.

29.     On or about June 29, 2017, and in furtherance of acquiring the assets of and becoming the successor-in-interest to EEC's rights, and pursuant to the agreement of Defendants EEC, Gardi, Gerber and Marcellino, and Eakins, the Plaintiff, Ensida Energy AFS, LLC, was formed.

30.     As set forth in the Letter of Intent dated June 3, 2017, and the June 14, 2017 Asset Purchase Agreement, and as otherwise agreed-to by the parties, Plaintiff agreed: (a) to pay off all business debts and liabilities of Defendant EEC and its individual owners, Defendants Gerber, Gardi, and Marcellino; and (b) to become the successor-in-interest to EEC's rights, with Plaintiff obtaining complete and full ownership rights and interest in all of EEC's then-existing intellectual

-6-

property, including all working platforms, models, designs, concepts, software, know-how, and other technology, so that Plaintiff could further develop the intellectual property and technology and otherwise became the successor-in-interest to EEC's rights for all business purposes.

31.     As part of Plaintiff's acquisition of EEC, Plaintiff and/or Eakins, its managing member, relied on Defendant Gardi's, Marcellino's, and Gerber's written and/or oral material representations and/or warranties that EEC: (a) was the sole owner of EEC's then-existing intellectual property and technology; and (b) that Plaintiff was acquiring full ownership interest in any and all rights to this intellectual property and technology as part of its acquisition of EEC.

32.     At the time of the parties' agreement in June 2017, EEC had no assets other than its then-existing intellectual property, which at the time as it was still in a developmental stage and was not commercially marketable in sought-after markets.

33.     At the time of the Parties' agreement in June 2017, EEC had not yet acquired the sought-after and required EPA certifications nor had it fully developed a working platform for use in the desired a vehicle platform for commercialization industry.

34.     It was only through the significant financial and managerial investment of Plaintiff that, through Plaintiff's funding and employment of Defendants, that the Plaintiff's proprietary System and Technology became marketable, commercially viable, and the recipient of EPA certifications.

35.     At the time of the parties' agreement in June 2017, EEC represented that its debt was approximately $600,000 and that EEC was years behind in rent and was in default of or behind in the payment of its employees, suppliers, vendors, and contractors .

36.     As part of Plaintiff's due diligence investigation and payment of EEC and Gardi tax preparation, Plaintiff determined in July 2018 after tax filings completed that EEC's debt was in fact in excess of $1,100,000.

37.     Plaintiff agreed to pay all of EEC's debts in exchange for the full ownership rights and interest in the then-existing intellectual property and technology in order to develop Plaintiff's System and related Technology.   In furtherance of Plaintiff's agreement with EEC and in reliance on the representations and warranties of Defendants Gardi, Marcellino, and Gerber, Plaintiff paid debts and liabilities of EEC, Gardi, Marcellino, and Gerber.

38.     Plaintiff became the successor-in-interest to EEC's rights for all other business purposes, including obtaining all necessary certifications, and entering into contracts, and agreements concerning Plaintiff's System and Technology, including but not limited to, any production, manufacturing, sales, distribution agreements, and any and all licenses, assignments, and other agreements with respect to any rights in and to Plaintiff's System and related Technology.

39.     As part of Plaintiff's acquisition of EEC, Plaintiff has spent in excess of $1,600,000, including the employment of Defendants Gardi and Gerber to develop the System and Technology into a commercially viable and marketable product for Plaintiff, the payment of all operating expenses to finalize the current development of the System and Technology, and in satisfying some of EEC's debts and obligations, including the payment and satisfaction of EEC's and its individual owners' debts and liabilities.

40.     As part of its acquisition of EEC, Plaintiff acquired full and complete ownership of all of EEC's assets, including, but not limited to, EEC's:

a.  confidential information;

b.  trade secrets;

c.  trademark, logo, and brand;

d.  intellectual property and technology, along with all other software, processes, procedures, trademarks, copyrights, patent rights; and

e.  all of EEC's good will.

41.    As a result of the Plaintiff's acquisition of EEC's assets, the Plaintiff succeeded to and acquired all of EEC's rights and all goods and services that EEC owned or marketed for sale.

42.    Plaintiff acquired and owns all rights in and ownership of that certain nascent alternative natural gas fuel technology previously in development and not fully developed by EEC and what has now become Plaintiff's proprietary, commercial, and marketable System and related Technology.

43.    Defendants EEC, Gardi, Gerber, and Marcellino fully agreed to Plaintiff's offer and payment of their debt in exchange for Plaintiff's complete and exclusive ownership and right to all assets and ownership rights previously held by EEC, including all intellectual property, trade secrets, brand, logo, trademarks, and other assets.

44.    Defendants EEC, Gardi, Gerber, and Marcellino fully accepted and agreed that Plaintiff has become the successor-in-interest of EEC's rights for all business purposes, including the development of Plaintiff's proprietary System and Technology.

45.    As the successor-in-interest to EEC's rights, Plaintiff is the exclusive owner of the "Ensida Energy" brand and, since June 29, 2017, has further developed, promoted, engineered,

-9-

designed, manufactured, marketed and produced the System and Technology under the "Ensida Energy" brand.

46.     Plaintiff operates and promotes the "Ensida Energy" brand through Plaintiff's company website, www.ensidaenergy.com.

47.     Upon information and belief, Plaintiff's company website domain name is registered in the name(s) of Defendants Gerber, Gardi, and/or Marcellino as the agents and/or representatives of Plaintiff.

48.     Since June 29, 2017, with the acquiescence, knowledge, permission, and/or consent of Defendants EEC, Gardi, Gerber and Marcellino, Plaintiff has continued business operations as the successor-in-interest to EEC's rights, and all business expenses for the "Ensida Energy" brand and/or companies have been paid by Plaintiff.

49.     Since June 29, 2017, Plaintiff has compensated and treated Defendants Gardi and Gerber as its employees.

50.     Since June 29, 2017, Defendants Gerber and Gardi were hired as employees of Plaintiff for the specific and express purpose of employing their inventive faculties in an effort to develop the intellectual property and technology previously held by EEC.

51.     Defendants Gerber and Gardi have consented to, acknowledged, and/or acquiesced to their employment relationship with Plaintiff through and by, among other things, accepting payment as W-2 employees, confirming through written communications their employment status, being provided a company employee handbook, being provided funding and reimbursement for expenses as company employees, holding themselves out to the world as Plaintiff's employees, and otherwise acting consistently with their employee relationship with Plaintiff.

52.     Plaintiff's employee handbook provided to Defendants Gerber and Gardi expressly states that all technology and/or inventions developed in the course of their employment with Plaintiff was and would be owned by Plaintiff and constituted "work for hire."

53.     Defendants Gerber and Gardi, as Plaintiff's salaried employees, did in fact develop the intellectual property and technology at issue in this action on behalf of Plaintiff and within the course and scope of their employment.

54.     Through Plaintiff's funding and compensation to Defendants, the intellectual property and technology at issue in this action has become and is Plaintiff's marketable, viable, and commercially operable proprietary System and Technology.

55.     Defendant Gardi further requested, received, acknowledged, and filed a K-1 tax return as Plaintiff's minority member.

56.     Since June 29, 2017, with the acquiescence, assistance, promotion, knowledge, permission, and/or consent of Defendants EEC, Gardi, Gerber and Marcellino, Plaintiff entered into contracts with customers, distributors, suppliers and/or other third parties in furtherance of developing the System and related Technology and has represented to third parties and the rest of the world that it is the successor-in-interest to EEC's rights and is the sole and exclusive owner of all intellectual property, and trade secrets constituting the System and related Technology, along with the "Ensida Energy" brand and/or trademark.

57.     Since June 29, 2017, Plaintiff has taken reasonable steps to protect its confidential and proprietary intellectual property, which information is not readily available to third-persons by proper means, including but not limited to by entering into confidentiality agreements with its key suppliers.

58.     Since June 29, 2017, through Plaintiff's payment of Defendants EEC's, Gardi's, Gerber's, and Marcellino's debts and through Plaintiff's payment of all normal and necessary operating business expenses for the "Ensida Energy" brand, Plaintiff has developed, engineered, designed, created, manufactured, marketed, produced, and sold products utilizing the System and related Technology to third parties and has obtained EPA certifications and applied for federal grants for the System and Technology, all in Plaintiff's name.

59.     At all times material, Defendant Gardi was a member and managerial and/or key employee of Plaintiff as its Chief Technical Officer, and was and/or is a member of Plaintiff, and by virtue of his position further maintained access to and knowledge of Plaintiff's confidential and proprietary business information, trade secrets, and the System and related Technology.

60.     At all times material, Defendant Gardi owed legal and fiduciary duties to Plaintiff of good faith, loyalty, and fair dealing, and to act in the best interest of the Plaintiff, and to not engage in any acts that are competitive with or damaging to the Plaintiff.

61.     At all times material, Defendant Gerber was a managerial employee and/or key employee of Plaintiff as the Director of National Sales, and by virtue of his position further maintained access to and knowledge of Plaintiff's confidential and proprietary business information, trade secrets, and the System and related Technology.

62.     At all times material, Defendant Gerber owed legal and fiduciary duties to Plaintiff of good faith, loyalty, and fair dealing and to act in the best interest of the Plaintiff and to not engage in any acts that are competitive with or damaging to the Plaintiff.

63.     At all times material, Defendant Marcellino was an agent and/or representative of the Plaintiff, and by virtue of his position further maintained access to and knowledge of Plaintiff's

confidential and proprietary business information, trade secrets, and the System and related Technology.

64.     At all times material, Defendant Marcellino owed legal and fiduciary duties to Plaintiff of good faith, loyalty, and fair dealing and to act in the best interest of the Plaintiff and to not engage in any acts that are competitive with or damaging to the Plaintiff.

65.     Upon information and belief, Defendant Mowitz is in the business of providing private equity for the acquisition and ownership of business entities.

66.     Since May 2017, neither Eakins nor Plaintiff have had any business dealings with Mowtiz and/or Imperium.

67.     Since May 2017, Mowitz had actual knowledge that Defendants Gerber, Gardi, and Marcellino were Plaintiff's employees, agents, and/or representatives, that they were working directly for Plaintiff for the purpose of developing Plaintiff's proprietary System and Technology, and that Plaintiff was developing the System and Technology to market as a commercially viable product.

68.     Upon information and belief, sometime before December 6, 2018, and through February 2019, Defendant Mowitz, individually and as an agent, representative, and/or employee of Imperium acting within the course and scope of his agency/employment with Imperium, and Defendants Gerber, Gardi, and Marcellino began discussions and/or plans to revise Plaintiff's Operating Agreement and/or employment agreements with Defendants Gerber, Gardi, and Marcellino to the detriment of Plaintiff.

69.     Upon information and belief, and as evidenced through Defendants' Gerber, Gardi, and Marcellino's company emails owned and maintained by Plaintiff, sometime before December

-13-

6, 2018, and through February 2019, Defendant Mowtiz, individually and as an agent, representative, and/or employee of Imperium acting within the course and scope of his agency/employment with Imperium, and Defendants Gerber, Gardi, and Marcellino conspired to usurp Plaintiff's ownership rights and/or interests to the System and related Technology acquired through Defendants' employment with Plaintiff and through Plaintiff's acquisition of EEC's assets.

70.     With the assistance, aid, or consultation of Defendant Mowitz, individually and as an employee, agent, and/or representative acting with the course and scope of his agency and/or employment with Imperium, Defendants Gerber, Gardi, and Marcellino conspired to claim ownership in Plaintiff's intellectual property, including the System and related Technology, in derogation of their agreement and/or contract with Plaintiff and in violation of Plaintiff's rights.

71.     Upon information and belief, and as evidenced by Defendants' Gardi, Gerber, and Marcellino's company emails owned and maintained by Plaintiff, Defendant Ensida Partners was created by Defendant Marcellino on December 6, 2018, for the improper purpose of, among other things: (a) claiming ownership rights and/or interest to Plaintiff's intellectual property, including the System and related Technology; (b) usurping and/or misappropriating Plaintiff's brand, trademark, and logo for the "Ensida Energy" brand and product; (c) competing with Plaintiff and usurping its corporate opportunities; (d) representing to competitors and other parties that it owns the System and Technology'; and (e) otherwise causing confusion to third parties regarding the ownership rights of the Ensida Energy brand and intellectual property, including the System and related Technology.

72.     On or about February 14, 2019, Plaintiff, through its managing member Eakins, provided a proposed Amended Operating Agreement, to include, among other things, Defendants Gardi, Marcellino, and Gerber's interest to become members of Plaintiff.

73.     In furtherance of finalizing the Amended Operating Agreement, Defendants Gardi, Gerber, Marcellino, and Ensida Partners have represented to Plaintiff that Defendant Ensida Partners has acquired the exclusive ownership interest in the System and Technology from Defendants Gerber, Gardi, and Marcellino, and that Defendant Ensida Partners has plans to compete with Plaintiff in the provision and sale of the System and Technology to the marketplace or otherwise replace Plaintiff as the owner, distributor, and/or licensor of the proprietary System and related Technology in the marketplace.

74.     By letter dated February 20, 2019, Plaintiff rejected Defendants' position and advised that, by virtue of Plaintiff's acquisition of EEC's assets and the employment of Defendants, Plaintiff owns all rights to the System and related Technology and that Defendant Ensida Partners has no ownership right, interest, or title in or to any of the Plaintiff's assets, specifically including, but not limited to, the System and/or Technology.

75.     Defendants Gerber, Gardi, Marcellino, and Ensida Partners have failed and/or refused to withdraw their claim to any ownership right and/or interest in Plaintiff's intellectual property, including the System and related Technology.

76.     Upon learning of Defendants' efforts to conspire against Plaintiff and the creation of Defendants' newly formed entity, Ensida Partners, Plaintiff revoked Defendants' Gerber, Gardi and Marcellino's access to company email accounts.

77.     In response, on or about February 20, 2019, Defendants Gerber, Gardi, and Marcellino knowingly and intentionally: (a) moved Plaintiff's website domain from its registered host IP address to a host site and IP address only accessible to the Defendants, and by doing so, (i) terminated Plaintiff's access to company emails, (ii) restricted and/or precluded Plaintiff's ability to send or receive company emails, (iii) misappropriated, detained, and/or asserted complete dominion and control over Plaintiff's company emails, and (iv) prevented and/or restricted Plaintiff's ability to conduct business through its company emails; and (b) revoked Plaintiff's managing member Eakin's access to and/or credentials for the company website, www.ensidaenergy.com; and (c) otherwise have asserted dominion and control over Plaintiff's company website and have refused to reinstate Plaintiff's access to and/or credentials to monitor and/or maintain the company website.

78.     On February 22, 2019, Plaintiff sent a cease-and-desist letter to Defendants Gerber, Gardi, and Marcellino concerning their improper misappropriation, detention, and/or conversion of Plaintiff's company website.

79.     Through February 22 through February 24, 2019, Defendants' counsel immediately reached out to Plaintiff's counsel to avoid legal action and requested a stand-fast agreement pending an in-person meeting between all parties to discuss the issues in good faith.

80.     Plaintiff agreed to a meeting to discuss the Amended Operating Agreement on the condition that Defendants would not be taking the position that they owned any of Plaintiff's intellectual property and/or technology, including the System and Technology. Further as part of Plaintiff's agreement to postpone immediate legal action, Defendants Gerber, Gardi, and Marcellino agreed to immediately cease all business activities pending a meeting with Plaintiff on

February 27, 2019. However, Defendants continued to refuse to return Plaintiff's access to its website at that time until the meeting was held.

81.     On the day of the scheduled February 27, 2019, meeting Defendants Gerber and Gardi, advised they would not be in attendance and Defendants again refused to recognize Plaintiff's ownership interest in the System and Technology.

82.     Further, as of February 27, 2019, Defendants Gerber, Gardi, and Marcellino terminated their employment with Plaintiff and advised that they have disclaimed any prior affiliation with Plaintiff.

83.     Despite Plaintiff's good faith efforts, Defendants Gerber, Gardi, and Marcellino have failed and/or refused to return access to and/or control over Plaintiff's website and emails to Plaintiff.

84.     Upon information and belief, some of Plaintiff's employee(s) have refused to return Plaintiff's personal property including company computers with proprietary trade secrets and confidential information at the direction of Defendants Gerber, Gardi, and/or Marcellino.

85.     Plaintiff has been forced to temporarily cease operations until its business emails, website, and accounts are restored and it can monitor its company's electronic communications and has all company property returned and safely secured.

86.     All conditions precedent to this action have been met, satisfied, or otherwise have been waived.

<u>COUNT I</u>
<u>TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST
DEFENDANTS GERBER, MARCELLINO, GARDI, ENSIDA PARTNERS, MOWITZ,
AND IMPERIUM</u>

Paragraphs 1 through 86 of this Complaint are hereby repleaded and incorporated herein by reference.

87.     Defendants Gerber, Marcellino, and Gardi have knowingly, intentionally and wrongfully misappropriated, detained, and/or asserted complete dominion and/or control over Plaintiff's property including its company emails, website, trademark, logo, and/or brand, for their own benefit in violation of the rights of Plaintiff.

88.     Defendants Gerber, Marcellino, Gardi, and Energy Partners have and/or have threatened to misappropriate Plaintiff's intellectual property, including Plaintiff's rights to the System and related Technology, in violation of Plaintiff's rights.

89.     Plaintiff has and will continue to suffer immediate irreparable harm and injury because Plaintiff has been shut out, precluded, and/or restricted from conducting business through company emails, sending or receiving company emails, accessing company emails, or otherwise monitoring its company emails.

90.     Plaintiff has and will suffer immediate irreparable harm and/or injury if Defendants continue and/or attempt to use Plaintiff's intellectual property and System and Technology in violation of Plaintiff's rights, including but not limited to, seeking certifications, licenses, and/or applications for use of the System and related Technology, in the name of Ensida Partners, as the wrongful purported owner of the System and related Technology in violation of Plaintiff's rights.

91.     Despite Plaintiff's February 20, 2019 letter and its February 22, 2019 cease-and-desist letter, Defendants have refused and/or failed to return Plaintiff's access to its

website, company emails, trademark and logo, and have refused to cease operations as Ensida Partners or operations in an effort to compete with Plaintiff's ownership rights and/or interests to the System and related Technology.

92.     Defendants Gerber, Marcellino, Gardi, Mowtiz, Imperium, and Ensida Partners have threatened, are planning, and/or conspiring to wrongfully misappropriate and use Plaintiff's assets including its intellectual property, the System and related Technology, and Plaintiff's website, company emails, trademark, logo, and/or brand, for their own benefit in violation of the rights of Plaintiff.

93.     Upon information and belief, the Defendants Gerber, Marcellino, Gardi, and Ensida Partners have and/or are continuing to engage in conversations with Mowtiz, individually and as an agent, employee and/or representative of Imperium, regarding Defendants Gerber, Marcellino, Gardi, and Ensida Partners' attempt to wrongfully claim ownership in Plaintiff's System and Technology for their own benefit in violation of the rights of Plaintiff and in breach of their contract with Plaintiff, and to further license or misuse Plaintiff's System and Technology to other third parties.

94.     Unless the Defendants' conduct is enjoined and restrained, the Plaintiff will suffer immediate and irreparable injury, loss, and damage as a result of the Defendants' wrongful use, misappropriation, and dissemination of the System and related Technology along with Plaintiff's brand, logo, and trademark.

95.     The full extent of disclosures and misappropriation is unknown at this time and Plaintiff has no adequate remedy at law to prevent the current and/or future misappropriation of Plaintiff's assets and/or tortious interference with Plaintiff's contractual relationships.

96.     Plaintiff is entitled to an Order from this Court immediately restraining, precluding and enjoining the Defendants Gerber, Gardi, and Marcellino from taking control of Plaintiff's company website and emails and reinstating Plaintiff's access to and/or right of control over its company website and emails.

97.     Plaintiff is entitled to an Order from this Court immediately restraining and/or enjoining Defendants Gerber, Gardi, Marcellino, Ensida Partners, Mowitz, and Imperium, from taking any actions or efforts to misappropriate Plaintiff's ownership rights to and/or in the System and related Technology to include work on the System and related Technology, precluding and enjoining Defendants from seeking any certifications, licenses, applications, grants, or other rights in contravention of Plaintiff's ownership rights to the System and related Technology, or otherwise attempting to convert existing contracts, licenses, grants, or certifications to Ensida Partners or to Defendants in violation of Plaintiff's rights.

98.     Based on the facts asserted in this Verified Complaint, Plaintiff has established a substantial likelihood of success on the merits of its claims.

99.     The threatened and immediate injury to Plaintiff outweighs the harm the relief sough would inflict on Defendants.

100.    A preliminary injunction would serve the public interest by, among other things, ensuring the enforcement of parties' contracts, protection of valuable corporate assets and/or intellectual property, encourage fair and open competition in the marketplace and dissuade unfair competition, misappropriation, and tortious interference of contracts.

WHEREFORE, Plaintiff seeks an immediate temporary restraining order and preliminary injunction: (i) precluding and enjoining Defendants Gerber, Gardi, and Marcellino from taking

-20-

control over Plaintiff's company website, www.ensidaenergy.com, Plaintiff's company emails, and immediately returning complete control and/or access to the company website and/or emails to Plaintiff; (ii) precluding and enjoining Defendants Gerber, Gardi, Marcellino, and Ensida Partners, from conducting any further work, testing, or acts in violation of Plaintiff's ownership rights to the System and Technology; (iii) precluding and enjoining Defendants Gerber, Gardi, Marcellino, and Ensida Partners from seeking any applications for or seeking in any other form, licenses, certifications, applications, contracts, or other acts in violation or contravention of Plaintiff's ownership rights to the System and related Technology; (iv) precluding and enjoining Defendants Mowitz and Imperium from any further discussions, acts, efforts, funding, or assistance of Defendants Gerber, Gardi, Marcellino and Ensida Partners from misappropriating Plaintiff's property including the System and Technology, competing with Plaintiff, usurping Plaintiff's business opportunities, and/or otherwise interfering with Plaintiff's business operations; and (v) awarding Plaintiff's attorney's fees and costs.

## COUNT II
## PERMANENT INJUNCTION AGAINST DEFENDANTS GERBER, MARCELLINO GARDI, MOWTIZ, IMPERIUM, AND ENSIDA PARTNERS

Paragraphs 1 through 86 of this Complaint are hereby repleaded and incorporated herein by reference.

101.    By virtue of their association with the Plaintiff and their knowledge and familiarity with the Plaintiff's assets, including the System and Technology, and access to Plaintiff's website, emails, brand, and logo, Defendants Gerber, Marcellino, Gardi, and Ensida Partners, have the ability and have shown an inclination to wrongfully misappropriate Plaintiff's assets, intellectual property, trademark, logo, and brand.

102.     Defendants Gerber, Marcellino, Gardi, Ensida Partners, and Mowtiz, as an agent, representative, and/or employee of Imperium, have threatened, are planning, and/or conspiring to wrongfully misappropriate and use Plaintiff's assets including its intellectual property, the System and related Technology, and Plaintiff's website, trademark, logo, and/or brand, for their own benefit in violation of the rights of Plaintiff.

103.     Upon information and belief, the Defendants Gerber, Marcellino, Gardi, and Ensida Partners have and/or are continuing to engage in conversations with Mowtiz and/or Imperium regarding Defendants Gerber, Marcellino, Gardi, and Ensida Partners' attempt to wrongfully claim ownership in Plaintiff's System and Technology for their own benefit in violation of the rights of Plaintiff and in breach of their contract with Plaintiff, and to further license or misuse Plaintiff's System and Technology to other third parties.

104.     Without an injunction, the Plaintiff will suffer irreparable injury or harm for which there is no adequate remedy at law.

105.     The interests of justice and the balance of hardships strongly favor issuing an injunction and an order permanently enjoining Defendants using the Plaintiff's assets, including the Technology, for their own personal use without the express written authorization of the Plaintiff.

106.     The public interest would be best served by the issuance of a permanent injunction by, among other things, ensuring the enforcement of parties' contracts, protection of valuable corporate assets and/or intellectual property, encourage fair and open competition in the marketplace and dissuade unfair competition, misappropriation, and tortious interference of contracts.

107.    For the reasons stated herein, the Plaintiff is entitled the issuance of a permanent injunction by the Court permanently and forever enjoining the Defendants from making use of any of the Plaintiff's assets, including intellectual property and the System and Technology, Plaintiff's website, logo, brand, and/or trademark without the express written consent of the Plaintiff.

WHEREFORE, Plaintiff seeks the issuance of a permanent injunction to preclude and/or enjoin Defendants Gerber, Marcellino, Gardi, Ensida Partners, Imperium, and Mowtiz from taking any further action to interfere with Plaintiff's intellectual property, assets, trade secrets, including but not limited to the System and Technology, its website, brand, logo, and/or trademark, and such further relief as this Court deems proper.

## COUNT III
## DECLARATORY JUDGMENT AGAINST DEFENDANTS GERBER, GARDI, MARCELLINO, ENSIDA PARTNERS, AND EEC

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

108.    This is a claim for declaratory relief pursuant to 28 U.S.C. § 2201.

109.    There is an actual *bona fide* dispute between Plaintiff Gerber, Gardi, Marcellino, Ensida Partners, and EEC as to Plaintiff's ownership rights and/or interest to the System and related Technology and Plaintiff's website, trademark, logo, and/or brand.

110.    Plaintiff is the rightful owner of all of intellectual property acquired from EEC as the successor-in-interest to EEC's rights, to include ownership rights and interest in all of EEC's then-existing intellectual property and the "Ensida Energy" trademark, logo, and/or brand.

111.    Plaintiff is the rightful owner of all intellectual property developed and created by and through Plaintiff's employment of Defendants Gardi and Gerber for the express and specific

-23-

purpose of developing Plaintiff's proprietary System and Technology to become commercially marketable and EPA-certified in desired markets through Plaintiff's funding and compensation of Defendants Gardi and Gerber.

112. Defendants Gerber, Gardi, Marcellino, Ensida Partners, and EEC have already asserted, continue to threaten to assert, and/or are planning and/or conspiring to claim an ownership interest to Plaintiff's intellectual property, including the System and related Technology, by, among other things, forming Ensida Partners, communicating with third parties concerning their alleged ownership interest, disclaiming any prior affiliation as employees of Plaintiff, and conspiring to undermine Plaintiff's rights in the System and related Technology.

113. Defendants Gerber, Gardi, Marcellino, Ensida Partners, and EEC have already asserted, continue to threaten to assert, and/or are planning and/or conspiring to claim an ownership interest to Plaintiff's website, trademark, logo, and brand.

114. Defendants Gerber, Gardi, Marcellino, Ensida Partners, and EEC have no ownership rights or interest in Plaintiff's intellectual property including the System and Technology and/or Plaintiff's trademark, logo, and/or brand.

WHEREFORE, Plaintiff seeks a declaratory judgment declaring that: (i) Defendants, Gerber, Gardi, Marcellino, Ensida Partners, and EEC have no independent or individual ownership rights and/or interest in or to any of Plaintiff's assets and intellectual property, including the System and related Technology, and/or the production, manufacturing, and/or sale of Plaintiff's products developed with, arising out of, or constituting the System and related Technology or Plaintiff's trademark, logo, and/or brand, and (ii) Plaintiff has sole and exclusive ownership rights and/or interest to and/or in all intellectual property formerly held by EEC and

developed and created by Plaintiff to include the System and Technology along with the "Ensida Energy" trademark, logo, and/or brand.

### COUNT IV
### BREACH OF FIDUCIARY DUTY OF LOYALTY AGAINST DEFENDANTS GERBER, GARDI, AND MARCELLINO

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

115.    At all times material, Defendants Gerber, Gardi, and Marcellino owed Plaintiff a fiduciary duty of loyalty.

116.    Defendants breached their duty of loyalty by, among other things, conspiring to misappropriate Plaintiff's assets including Plaintiff's ownership rights to the System and related Technology, conspiring with third parties including Defendant Mowtiz, to create a new business entity, Ensida Partners, for the purpose of attempting to usurp Plaintiff's rights in the System and related Technology and/or license Plaintiff's technology without Plaintiff's consent, and otherwise competing with Plaintiff and to take corporate opportunities from Plaintiff.

117.    Further, by forming Ensida Partners and threatening, planning, and/or conspiring to misappropriate Plaintiff's assets, Defendants have placed themselves in an adverse position to Plaintiff and are attempting to extort Plaintiff by attempting to reclaim ownership rights in the System and related Technology and/or competing directly with Plaintiff in the area of Plaintiff's business, all of which are directly contrary to their duties to Plaintiff.

118.    As a result of Defendants' breach of their fiduciary duty Plaintiff has suffered harm, including actual and/or threatened misappropriation of its assets, and actual and/or threatened interference with Plaintiff's business.

WHEREFORE, Plaintiff seeks judgment against Defendants Gerber, Gardi, and Marcellino to include disgorgement of any profits earned from their breach of their fiduciary duty of loyalty to Plaintiff, a preliminary and permanent injunction precluding and enjoining Defendants from any threatened, attempted, or actual misappropriation of Plaintiff's assets, including ownership rights in the System and related Technology, from pursuing any business by and/or through Ensida Parnters or otherwise that would compete with Plaintiff's business, and any damages, including compensatory and punitive damages, caused to Plaintiff by Defendants' breach of their fiduciary duty to be determined at trial.

## COUNT V
## BREACH OF FIDUCIARY DUTY OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANTS GERBER, GARDI, AND MARCELLINO

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

119.    At all times material, Defendants Gerber, Gardi, and Marcellino owed Plaintiff a fiduciary duty of good faith and fair dealing.

120.    Defendants breached their duty of good faith and fair dealing by, among other things, conspiring to misappropriate Plaintiff's assets including Plaintiff's ownership rights to the System and related Technology, conspiring with third parties including Defendant Mowtiz, to create a new business entity, Ensida Partners, for the purpose of attempting to usurp Plaintiff's rights in the System and related Technology and/or license Plaintiff's technology without Plaintiff's consent, and otherwise competing with Plaintiff and to take corporate opportunities from Plaintiff.

121.     Further, by forming Ensida Partners and threatening, planning, and/or conspiring to misappropriate Plaintiff's assets, Defendants have placed themselves in an adverse position to Plaintiff and are attempting to extort Plaintiff by attempting to reclaim ownership rights in the System and related Technology and/or competing directly with Plaintiff in the area of Plaintiff's business, all of which are directly contrary to their duties to Plaintiff.

122.     As a result of Defendants' breach of their fiduciary duty Plaintiff has suffered damages and/or irreparable harm, including actual and/or threatened misappropriation of its assets, and actual and/or threatened interference with Plaintiff's business.

WHEREFORE, Plaintiff seeks judgment against Defendants Gerber, Gardi, and Marcellino to include disgorgement of any profits earned from their breach of their fiduciary duty of good faith and fair dealing to Plaintiff, a preliminary and permanent injunction precluding and enjoining Defendants from any threatened, attempted, or actual misappropriation of Plaintiff's assets, including ownership rights in the System and related Technology, from pursuing any business by and/or through Ensida Parnters or otherwise that would compete with Plaintiff's business, and any damages caused to Plaintiff by Defendants' breach of their fiduciary duty to be determined at trial.

## COUNT VI
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES AGAINST DEFENDANTS MOWTIZ AND IMPERIUM

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

123.     Defendants Gerber, Gardi and Marcellino owed Plaintiff fiduciary duties of loyalty and good faith and fair dealing.

124.    Defendants Gerber, Gardi, and Marcellino breached their duty of loyalty and good faith and fair dealing by, among other things, conspiring to misappropriate Plaintiff's assets including Plaintiff's ownership rights to the System and related Technology, conspiring with third parties including Defendant Mowtiz as an agent, representative and/or employee of Imperium, acting within the course and scope of his agency/employment for Imperium, to create a new business entity, Ensida Partners, for the purpose of attempting to usurp Plaintiff's rights in the System and related Technology and/or license Plaintiff's technology without Plaintiff's consent, and otherwise competing with Plaintiff and to take corporate opportunities from Plaintiff.

125.    Defendants Mowitz and Imperium, neither of whom are fiduciaries of the Plaintiff, substantially and knowingly participated in, benefitted from, provided substantial assistance or encouragement to and aided and abetted the breach of fiduciary duty or duties engaged in by Defendants Gerber, Gardi and Marcellino.

126.    Defendant Imperium is vicariously liable for the acts and/or tortious conduct of Mowtiz committed within the course and scope of his agency/employment with Imperium set forth herein.

127.    As a result of Defendants' breaches of their fiduciary duty, which were aided and abetted by Defendants Mowitz and Imperium, Plaintiff has suffered damages and/or irreparable harm, including actual and/or threatened misappropriation of its assets, and actual and/or threatened interference with Plaintiff's business.

WHEREFORE, Plaintiff seeks judgment against Defendants Mowtiz and Imperium to include disgorgement of any profits earned from Defendants' breach of their fiduciary duty of good faith and fair dealing to Plaintiff, a preliminary and permanent injunction precluding and

enjoining Mowitz and/or Imperium from any further aiding and abetting of Defendants' breach of their fiduciary duties including their threatened, attempted, or actual misappropriation of Plaintiff's assets, including ownership rights in the System and related Technology, from pursuing any business by and/or through Ensida Parnters or otherwise that would compete with Plaintiff's business, and any damages, including compensatory and punitive damages, caused to Plaintiff by Defendants' breach of their fiduciary duty to be determined at trial.

**COUNT VII**
**TORTIOUS INTERFERENCE WITH BUSINESS AND CONTRACTUAL RELATIONS**
**AGAINST DEFENDANTS MOWITZ AND IMPERIUM**

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

128.    There is a current business relationship by, between, and among Plaintiff and Defendants Gerber, Gardi, Marcellino, who entered into a contract and/or agreement for the purchase and/or sale of EEC to Plaintiff, inclusive of all of EEC's assets and intellectual property and for the employment of Defendants Gerber and Gardi to develop Plaintiff's System and related Technology.

129.    Defendants Gerber, Gardi, and Marcellino were Plaintiff's members and/or managerial and/or key employees, who by virtue of their positions, have confidential and sensitive information concerning Plaintiff's business operations and intellectual property.

130.    Upon information and belief, Defendant Mowitz and Defendant Imperium, by and through its agent, employee and/or authorized representative Mowitz, had knowledge of the relationship between Plaintiff and Defendants Gerber, Gardi, and Marcellino.

-29-

131.    Defendant Mowtiz has intentionally and/or unjustifiably interfered with the relationship between Plaintiff and Defendants Gerber, Gardi, and Marcellino and has induced or otherwise caused Defendants Gerber, Gardi, and Marcellino to attempt to rescind or breach their agreement with Plaintiff concerning the transfer of EEC's assets to Plaintiff or otherwise act in derogation of their contractual obligations and/or duties as key employees and/or members of Plaintiff.

132.    As a result of Defendant Mowtiz's tortious interference, Plaintiff has been damaged and/or harmed including Defendants' attempts, threats, and/or actual misappropriation of Plaintiff's confidential and/or proprietary corporate assets, intellectual property, and rights to the System and Technology.

133.    Defendant Imperium is vicariously liable for all acts and/or tortious conduct committed by Mowtiz within the course and scope of his agency/employment with Imperium set forth herein.

WHEREFORE, Plaintiff seeks a preliminary and permanent injunction against Defendants Mowtiz and Imperium to preclude any further tortious interference with Plaintiff's contractual and/or business relationship with Defendants Gerber, Gardi, and Marcellino, and for any damages, including compensatory and punitive damages, resulting from Defendant Mowtiz's tortious conduct to be proven at trial.

## COUNT VIII
## MISAPPROPRIATION OF BUSINESS ASSETS AND REPLEVIN UNDER FLORIDA STATUTES § 78.01 AGAINST DEFENDANTS GERBER, GARDI, MARCELLINO, ENSIDA PARTNERS

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

134.    The Defendants Gerber, Gardi, Marcellino, and Ensida Partners have wrongfully misappropriated the assets of the Plaintiff including but not limited to the control of the Plaintiff's website, www.ensidaenergy.com, Plaintiff's company emails, Plaintiff's trademark, logo, and/or brand, and have asserted dominion and/or control over Plaintiff's intellectual property including the System and related Technology.

135.    Defendants Gerber, Gardi, Marcellino, and Ensida Partners have taken action to wrongfully detain and/or assert dominion over Plaintiff's property, including its website domain, company emails, trademark, logo, and brand, and rights to Plaintiff's intellectual property, including the System and related Technology, which is inconsistent with Plaintiff's ownership interest therein.

136.    The acts of the Defendants in misappropriating Plaintiff's assets and/or detention of Plaintiff's website, trademark, logo, brand and intellectual property are wrongful and tortious and have caused damage and hardship to the Plaintiff in an amount to be proven at trial.

WHEREFORE, Plaintiff seeks a writ of replevin pursuant to Florida Statutes § 78.01 to recover its personal property from Defendants Gerber, Gardi, Marcellino, and Ensida Partners to include return of dominion and control over Plaintiff's website, corporate emails, and accompanying trademark, brand, logo, intellectual property, and any amount of damages to be proven at trial for misappropriation and detention of Plaintiff's personal property and/or assets.

### COUNT IX
### MISAPPROPRIATION OF TRADE SECRETS UNDER FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836(b)(1), AGAINST DEFENDANTS GERBER, GARDI, MARCELLINO AND ENSIDA PARTNERS

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

-31-

137.     Plaintiff possesses information of independent economic value from not being readily known or available by proper means, namely its proprietary System and related Technology, along with its confidential business relationships, contracts, agreements and suppliers that is lawfully owned by Plaintiff and for which Plaintiff took reasonable measures to keep secret, including but not limited to, entering into confidential contracts and/or agreements with its material suppliers.

138.     Plaintiff's trade secrets pertain to goods and/or services used in or intended for use in interstate commerce.

139.     Defendants Gerber, Gardi, Marcellino, and Ensida Partners have wrongfully claimed rights to use and/or disclose and have otherwise misappropriated Plaintiff's trade secrets, and otherwise acquired Plaintiff's trade secrets, including Plaintiff's proprietary System and related Technology, despite an obligation to maintain its secrecy and in derogation of applicable law.

140.     Defendants' misappropriation of Plaintiff's trade secrets was willful and malicious due to their knowledge of Plaintiff's rights to the System and Technology over the course of Plaintiff's funding and efforts over the last two years with Defendants.

WHEREFORE, Plaintiff seeks judgment against Defendants Gerber, Gardi, Marcellino, and Ensida Partners including preliminary and permanent injunctive relief to prevent any actual or threatened misappropriation described herein, payment of reasonable royalties for Defendants' misappropriation, disgorgement of any profits wrongfully obtained, actual damages, and exemplary or punitive damages.

**COUNT X**
**MISAPPROPRIATION OF TRADE SECRETS UNDER FLORIDA STATUTES § 688.001**
**ET SEQ. AGAINST DEFENDANTS GERBER, GARDI, MARCELLINO, ENSIDA**
**PARTNERS**

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

141.    Plaintiff's confidential and proprietary information, including the System and Technology, along with other related intellectual property, derive actual or potential independent economic value from not being generally known to other persons who could obtain value from its disclosure or use and are not readily ascertainable by proper means by other persons.

142.    Plaintiff took reasonable steps, under the circumstances, to maintain the secrecy of its confidential and proprietary information, including the System and Technology, and related intellectual property.

143.    In violation of Florida Statutes § 688.001 et seq., Defendants have disclosed or used, have threatened to disclose or use, and/or are planning and/or attempting to disclose and/or use, Plaintiff's trade secrets without its express or implied consent in violation of their duties to maintain the secrecy and/or confidence of Plaintiff's confidential and/or proprietary trade secrets.

WHEREFORE, Plaintiff seeks immediate and permanent injunctive relief precluding and/or enjoining Defendants' actual or threated misappropriation of Plaintiff's trade secrets, royalties and/or disgorgement in any profits made by Defendants from their misappropriation of Plaintiff's trade secrets, damages, including compensatory and punitive damages, and such further relief available under Florida law.

**COUNT XI**
**SPECIFIC PERFORMANCE – BREACH OF EMPLOYMENT CONTRACT AGAINST**
**DEFENDANTS GARDI AND GERBER**

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

144.    Plaintiff entered into a valid and enforceable employment contract with Defendants Gerber and Gardi, through both written and oral terms which were sufficiently clear and definite, and/or which is established as a matter of law through the parties' conduct, for the employment of Defendants Gerber and Gardi for the specific purpose of developing and creating Plaintiff's commercially marketable, viable, and EPA-certified System and related Technology.

145.    A term of Plaintiff's employment contract with Defendants Gerber and Gardi necessarily is that what Plaintiff has paid Defendants Gerber and Gardi to produce belongs to Plaintiff, as the sole and exclusive owner of Plaintiff's proprietary System and Technology.   This agreement is confirmed by the terms of the employee handbook governing Defendants' employment.

146.    Plaintiff has performed all material obligations under its contract for employment of Defendants Gerber and Gardi, including but not limited to, payment of wages as salaried employees, providing funding for Defendants' operations on Plaintiff's behalf, and otherwise satisfying all material conditions to Defendants' employment with Plaintiff.

147.    Defendants Gerber and Gardi have breached their employment contract with Plaintiff by, among other things, refusing to cede ownership to Plaintiff's System and Technology to Plaintiff, refusing to acknowledge Plaintiff's ownership rights and/or disclaim Defendants' purported ownership rights in Plaintiff's proprietary System and Technology, and otherwise planning and/or conspiring to usurp Plaintiff's ownership rights, compete with Plaintiff, and

attempt to license and/or use Plaintiff's proprietary System and Technology without Plaintiff's express consent and/or authorization.

148.    As a result of Defendants' breach of contract Plaintiff has suffered irreparable harm and Plaintiff has no adequate remedy at law because its damages are unknown or unascertainable at this time, including but not limited to loss of business opportunities, goodwill, contracts, and/or its rights to the System and related Technology.

WHEREFORE, Plaintiff seeks judgment against Defendants for specific performance of their obligations under their employment contract with Plaintiff to include Plaintiff's ownership interest in the Technology and System, and other intellectual property developed by Defendants Gerber and Gardi in the course and scope of their employment for Plaintiff.

**COUNT XII**
**SPECIFIC PERFORMANCE - BREACH OF CONTRACT AGAINST DEFENDANTS GERBER, GARDI, MARCELLINO, AND EEC**

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

149.    Plaintiff entered into a valid and enforceable contract with Defendants Gerber, Gardi, Marcellino, and EEC, through both written and oral terms which were sufficiently clear and definite for the purchase and acquisition of EEC by Plaintiff, to include Plaintiff's purchase of all of EEC's then-existing assets, inclusive of its then-existing intellectual property, technology, and the Ensida Energy brand and goodwill.

150.    Plaintiff provided sufficient and valid consideration in exchange for its purchase of EEC's assets, as set forth herein, including the payment or assumption of all of EEC's debts and

payment to EEC by and through its agents and sole owners, Defendants Gerber, Marcellino, and Gardi.

151.    Defendants Gerber, Marcellino, and Gardi, as the sole owners and agents of EEC, accepted Plaintiff's payment and assumption of EEC's debts and liabilities pursuant to the terms of the Parties' contract.

152.    Defendants are in breach of their contract with Plaintiff by, among other things, refusing to acknowledge or disclaiming Plaintiff's ownership and rights to EEC's assets, including EEC's intellectual property and technology and the Ensida Energy brand, along with all contracts, rights, obligations, and good will of EEC that Plaintiff has assumed and/or acquired.

153.    As a result of Defendants' breach of contract Plaintiff has suffered irreparable harm and Plaintiff has no adequate remedy at law because its damages are unknown or unascertainable at this time, including but not limited to loss of business opportunities, goodwill, contracts, and/or its rights to the Plaintiff's currently developed System and related Technology.

WHEREFORE, Plaintiff seeks judgment against Defendants for specific performance of their obligations under the contract to include the transfer and/or assignment of all EEC's assets, including any and all ownership interest in EEC's then-existing intellectual property and technology, the Ensida Energy brand, contracts and agreements, licenses, assignments, goodwill, certifications, and other intellectual property.

## COUNT XIII
## SPECIFIC PERFORMANCE - BREACH OF IMPLIED CONTRACT AGAINST DEFENDANTS GERBER, GARDI, MARCELLINO, AND EEC

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

-36-

154.    Plaintiff entered into a valid and enforceable contract with Defendants Gerber, Gardi, Marcellino, and EEC for the acquisition of all of EEC's assets, inclusive of EEC's then-existing intellectual property and technology, and Ensida Energy brand and goodwill.

155.    The terms of the parties' contract has been established as a matter of law through the parties' conduct, including, but not limited, to Plaintiff's payment and assumption of all of EEC's debt and obligations, Defendants' acceptance of Plaintiff's payment, Plaintiff's assumption of the Ensida Energy brand, employment of the Defendants as its key managerial level employees and officers, Plaintiff's assumption of all business contracts, good will, marketing materials, website domain, and branding in the name of Plaintiff as Ensida Energy and the successor-in-interest to EEC's rights, and Defendants' recognition of Plaintiff as the successor-in-interest to EEC's rights and the sole owner of all proprietary information of Ensida Energy, to include Plaintiff's developed and marketable System and related Technology.

156.    Plaintiff has performed its obligations under the contract.

157.    Defendants have breached their obligations under the contract, by among other things, refusing to acknowledge and/or disclaiming Plaintiff's ownership and rights to EEC's assets, including its intellectual property and technology and the Ensida Energy brand, along with all contracts, rights, obligations, and good will of EEC that Plaintiff has assumed and/or acquired.

158.    As a result of Defendants' breach of contract Plaintiff has suffered irreparable harm and Plaintiff has no adequate remedy at law because its damages are unknown or unascertainable at this time, including but not limited to loss of business opportunities, goodwill, contracts, and/or its rights to Plaintiff's proprietary and commercially marketable System and Technology.

WHEREFORE, Plaintiff seeks judgment against Defendants for specific performance of their obligations under the contract to include the transfer and/or assignment of all EEC's assets, including any and all ownership interest in EEC's intellectual property and technology, the "Ensida Energy" mark and brand, contracts and agreements, licenses, assignments, goodwill, certifications, and other intellectual property, along with all other material terms under the contract.

<u>**COUNT XIV**</u>
<u>**PROMISSORY ESTOPPEL AGAINST DEFENDANTS GERBER, GARDI, MARCELLINO, AND EEC**</u>

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

159.    Defendants Gerber, Gardi, Marcellino, and EEC definitively promised and/or agreed to transfer and/or sell all of EEC's assets, including its ownership rights to any and all intellectual property, technology, good will, contracts, licenses, certifications, and other corporate assets to Plaintiff in exchange for Plaintiff's payment and assumption of EEC's debt.

160.    Defendants Gerber and Gardi further promised and/or agreed to work as Plaintiff's employees for the specific purpose of developing and creating Plaintiff's currently marketable and commercially valuable proprietary System and related Technology.

161.    Defendants intended that Plaintiff would rely on their promise and should have expected their promise to change Plaintiff's behavior.

162.    In reasonable reliance on Defendants' promise and/or agreement, Plaintiff detrimentally changed position and/or its behavior by, among other things, assuming all of EEC's debt and making payment in full for all of EEC's obligations, becoming an incorporated Delaware

limited liability company for this very purpose, entering into contracts with third parties under the representation that it was the sole and exclusive owner to all of EEC's assets, including its intellectual property, and Plaintiff's proprietary System and related Technology, creating a business platform, website, marketing materials, EPA certifications (all in Plaintiff's name), promoting Plaintiff's products, System, and related Technology, bringing the System and related Technology to market, compensating Defendants Gerber and Gardi as employees, and otherwise performing as-agreed, as the successor-in-interest to EEC's rights and all of its intellectual property, System, and related Technology.

163. Injustice can be avoided only if Defendants' promise is enforced.

WHEREFORE, Plaintiff seeks judgment against Defendants Gerber, Gardi, Marcellino, and EEC to include specific performance to enforce the terms of the parties' agreement, transferring, assigning, and/or selling all of EEC's assets, including intellectual property to Plaintiff, along with the Ensida Energy brand and mark, and transferring and declaring Plaintiff's ownership interest in the proprietary System and related Technology developed by and through Defendant Gerber and Gardi's employment with Plaintiff, along with all other material terms promised by Defendants to Plaintiff.

<u>**COUNT XV**</u>
<u>**UNJUST ENRICHMENT AGAINST DEFENDANTS GERBER, GARDI, MARCELLINO, AND EEC**</u>

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

164. Plaintiff conferred a benefit on Defendants Gerber, Gardi, Marcellino, Ensida Partners, and EEC, to include, among other things: (a) payment and assumption of all of EEC's

-39-

debts and obligations; (b) the formation of a Delaware LLC for the purpose of becoming the successor-in-interest to EEC's rights; (c) hiring and compensating Defendants Gerber, Gardi, and/or Marcellino as key managerial employees, agents, representatives, and/or members of Plaintiff, (d) assuming all contractual obligations of EEC; (e) developing and funding all previously owned EEC intellectual property and technology, to market to create the developed, marketable, and commercially valuable System and related Technology; (f) entering into new contracts with clients and customers; (g) preparing and marketing the "Ensida Energy" brand through its website, promotional materials, and marketing campaigns to prospective customers; (h) obtaining EPA certifications for the System and related Technology; and (i) applying for federal grants, and other benefits to promote the System and related Technology to the benefit of Defendants.

165.    Defendants had knowledge of these benefits.

166.    Defendants have accepted and/or retained the benefits conferred.

167.    The circumstances are such that it would be inequitable for the Defendants to retain the benefit of Plaintiff's performance and/or services without compensating Plaintiff as agreed and/or transferring and/or assigning all ownership interests in EEC intellectual property, System, and related Technology, as the parties agreed.

WHEREFORE, Plaintiff seeks judgment against Defendants Gerber, Gardi, Marcellino, and EEC including reimbursement of all monies unlawfully accepted by Defendants, plus interest, royalties and/or disgorgement of profits wrongfully assumed or conferred upon Defendants, and any further relief to be proven at trial.

## COUNT XVI
## CIVIL CONSPIRACY AGAINST DEFENDANTS GERBER, GARDI, MARCELLINO, ENSIDA PARTERNS, AND MOWITZ

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

168.    Defendants Gerber, Gardi, Marcellino, Ensida Partners, and Mowtiz, have combined, agreed and/or acted in concert to accomplish an unlawful purpose or other purposes by unlawful means in the pursuance of a conspiracy to wrongfully claim rights and/or ownership to Plaintiff's intellectual property, proprietary business information, trade secrets, and other corporate assets, including the System and related Technology and have taken action in furtherance of said conspiracy, including taking possession of and/or exercising control over such assets and property of Plaintiff.

169.    Plaintiff has suffered damages and/or irreparable harm as a result of Defendants' conspiracy, including actual, imminent, and/or threatened misappropriation of Plaintiff's assets and intellectual property.

WHEREFORE, Plaintiff seeks judgment against Defendants including preliminary and permanent injunctive relief, disgorgement of any profits resulting from Defendants' conspiracy, and damages, including compensatory and punitive damages, in an amount to be proven at trial.

## COUNT XVII
## FEDERAL UNFAIR COMPETITION PURSUANT TO 15 U.S.C. § 1125(a) AGAINST DEFENDANTS GERBER, MARCELLINO, GARDI, AND ENSIDA PARTNERS

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

170.    Plaintiff has a protectable interest in the "Ensida Energy" marks, brand, products, System and related Technology.

171.    Plaintiff is a well known and prominent corporation involved in the design, development, manufacture, supply, and sale of high quality, EPA certified, alternative fuel systems for motor vehicles, and has done so since at least June 29, 2017, using its easily recognized and distinctive "Ensida Energy" brand.

172.    Plaintiff owns and has developed these valuable trademark rights and associated good will in the state of Florida and nationwide, and the products, marketing materials, and Ensida Energy brand, identify Plaintiff as the source of goods and services bearing these marks.

173.    In violation of 15 U.S.C. § 1125(a), Defendants asserted unauthorized dominion and/or control over Plaintiff's mark or business name, including an internet domain name, with the same or confusingly similar to the Plaintiff's Ensida Energy brand, such that Defendants' use of the "Ensida" name in Defendants' newly established business will create a likelihood of consumer confusion as the proper origin of Plaintiff's goods and services.

174.    Defendants' unauthorized use of Plaintiff's mark and/or brand was willful.

WHEREFORE, Plaintiff seeks a temporary and permanent injunction pursuant to U.S.C. § 1116 precluding and enjoining Defendants from any further use of Plaintiff's trademark, brand, products, the Technology and/or Systems, and for damages pursuant to U.S.C. §§ 1117, 1118, to include Defendants' profits from their improper use of Plaintiff's trademark and/or property, damages to be determined at trial, and Plaintiff's attorney's fees and costs.

-42-

## COUNT XVII
## FEDERAL TRADEMARK DILUTION PURSUANT TO 15 U.S.C. § 1125(c) AGAINST DEFENDANTS GERBER, MARCELLINO, GARDI, AND ENSIDA PARTNERS

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

175.    Plaintiff has a protectable interest in the Ensida Energy marks, brand, products, Technology, and/or System.

176.    Plaintiff is a well known and prominent corporation involved in the design, development, manufacture, supply, and sale of high quality, EPA certified, alternative fuel systems for motor vehicles, and has done so since at least June 29, 2017, using its easily recognized and distinctive "Ensida Energy" brand.

177.    Plaintiff owns and has developed these valuable trademark rights and associated good will in the state of Florida and nationwide, and the products, marketing materials, and Ensida Energy brand, identify Plaintiff as the source of goods and services bearing these marks.

178.    Defendants asserted unauthorized dominion and/or control over Plaintiff's mark or business name, including an internet domain name, with the same or confusingly similar to the Plaintiff's Ensida Energy brand, such that Defendants' use of the "Ensida" name in Defendants' newly established business will create a likelihood of dilution by blurring or dilution by tarnishment of Plaintiff's famous mark.

179.    Defendants' unauthorized use of Plaintiff's mark and/or brand was willful.

WHEREFORE, Plaintiff seeks a temporary and permanent injunction pursuant to U.S.C. § 1116 precluding and enjoining Defendants from any further use of Plaintiff's brand, products, the Technology and/or Systems, and for damages pursuant to U.S.C. §§ 1117, 1118, to include

Defendants' profits from their improper use of Plaintiff's trademark and/or property, damages to be determined at trial, and Plaintiff's attorney's fees and costs.

**COUNT XIX**
**FEDERAL CYBERPIRACY PURSUANT TO 15 U.S.C. § 1125(d) AGAINST**
**DEFENDANTS GERBER, MARCELLINO, GARDI, AND ENSIDA PARTNERS**

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

180.    Plaintiff has a protectable interest in the Ensida Energy marks, brand, products, Technology, and/or System.

181.    Plaintiff is a well known and prominent corporation involved in the design, development, manufacture, supply, and sale of high quality, EPA certified, alternative fuel systems for motor vehicles, and has done so since at least June 29, 2017, using its easily recognized and distinctive "Ensida Energy" brand.

182.    Plaintiff has ownership rights to the trademark, logo, and brand associated with the domain name www.ensidaenergy.com for its "Ensida Energy" brand, technology, and marketing, at the domain.

183.    In violation of 15 U.S.C. § 1126(d), Defendants asserted dominion and control over Plaintiff's trademark, logo, and brand on Plaintiff's www.ensidaenergy.com domain name, and has used the domain name with the bad faith intent to profit from Plaintiff's trademark, brand, and/or logo.

184.    Defendants have no right to Plaintiff's trademark or other intellectual property associated with the domain name.

-44-

185.     Defendants' actions were made in bad faith or with a reckless disregard of Plaintiff's rights to its trademark and intellectual property.

WHEREFORE, Plaintiff seeks judgment against Defendants transferring the domain name to Plaintiff as the owner of the "Ensida Energy" trademark, logo, and/or brand, and a temporary and permanent injunction pursuant to U.S.C. § 1116 precluding and enjoining Defendants from any further use of Plaintiff's brand, products, the Technology and/or Systems, and for damages pursuant to U.S.C. §§ 1117, 1118, to include Defendants' profits from their improper use of Plaintiff's trademark and/or property, damages to be determined at trial, and Plaintiff's attorney's fees and costs.

**COUNT XX**
**UNFAIR COMPETITION UNDER FLORIDA STATUTES § 501.204 AGAINST DEFENDANTS GERBER, MARCELLINO, GARDI, AND ENSIDA PARTNERS**

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

186.     Plaintiff has a protectable interest in the "Ensida Energy" marks, brand, products, Technology, and/or System.

187.     Plaintiff is the prior user of the trade name or service mark for "Ensida Energy" along with the associated Technology and Systems, that are manufactured, produced, and sold by Plaintiff.

188.     Plaintiff's trade name or service mark is suggestive or has acquired secondary meaning through Plaintiff's continuous commercial use of the Ensida Energy brand.

189.     Defendants are using a confusingly similar trade name or service mark to indicate or identify similar services rendered (or similar goods marketed) by Plaintiff in competition with

Plaintiff in the same trade area in which Plaintiff has already established its trade name or service mark.

190.   As a result of Defendants' actions, or threatened actions, consumer confusion as to the source or sponsorship of Defendants' goods or services is likely.

191.   Defendants' actions constitute unfair and deceptive practices in the conduct of trade and/or commerce in the State of Florida.

192.   Plaintiff has been aggrieved by Defendants' unauthorized misuse of its trade name and/or mark and will continue to suffer harm due to Defendants' wrongful unfair and deceptive trade practices.

193.   Plaintiff is entitled to declaratory judgment, damages, attorney's fees and costs, and an injunction to preclude Defendants from violating Florida's Deceptive and Unfair Trade Practices Act pursuant to § 501.211, Fla. Stat.

WHEREFORE, Plaintiff seeks judgment against Defendants transferring the domain name to Plaintiff as the owner of the "Ensida Energy" trademark, logo, and/or brand, and a temporary and permanent injunction, precluding and enjoining Defendants from any further use of Plaintiff's brand, products, the Technology and/or Systems, and for damages to include Defendants' profits from their improper use of Plaintiff's trademark and/or property, damages to be determined at trial, and Plaintiff's attorney's fees and costs.

## COUNT XXI
### UNFAIR COMPETITION UNDER FLORIDA COMMON LAW AGAINST DEFENDANTS GERBER, MARCELLINO, GARDI, AND ENSIDA PARTNERS

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

-46-

194.     Plaintiff is the prior user of the trade name or service mark for "Ensida Energy" along with the associated Technology and Systems that are manufactured, produced, and sold by Plaintiff.

195.     Plaintiff's trade name or service mark is suggestive or has acquired secondary meaning through Plaintiff's continuous commercial use of the Ensida Energy brand.

196.     Defendants are using a confusingly similar trade name or service mark to indicate or identify similar services rendered (or similar goods marketed) by Plaintiff in competition with Plaintiff in the same trade area in which Plaintiff has already established its trade name or service mark.

197.     As a result of Defendants' actions, or threatened actions, consumer confusion as to the source or sponsorship of Defendants' goods or services is likely.

WHEREFORE, Plaintiff seeks immediate and permanent injunctive relief precluding and enjoining Defendants from any further unauthorized use of Plaintiff's trademark or brand, Technology or System, and further seeks damages to include disgorgement of any profits earned by Defendants, and any further damages caused by Defendants to be proved at trial.

## COUNT XXII
## FLORIDA COMMON LAW TRADEMARK INFRINGEMENT AGAINST ALL DEFENDANTS

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

198.     Plaintiff has ownership rights to the Ensida Energy brand, website, and marketing materials through its actual and continuous use in commerce.

199.   Plaintiff adopted and used the "Ensida Energy" name, mark, symbol and logo on its website and through promotional materials throughout the state of Florida and nationwide, and as a means of establishing good will and reputation along with describing and identifying its particular services rendered or offered by it, including the goods and products manufactured and sold by Plaintiff, and to distinguish it from other alternative fuel sources sold by others.

200.   The Ensida Energy brand, website, and marketing materials are inherently distinctive and have acquired distinctiveness through Plaintiff's use of the Ensida Energy brand on its website and through promotional and marketing materials.

201.   Defendants Gerber, Marcellino, Gardi, and Ensida Partners have attempted to use and/or are using the Ensida trademark in commerce, through the creation of a newly formed company, misappropriation of Plaintiff's "Ensida Energy" domain name without Plaintiff's consent.

202.   Defendants' unauthorized use of the Plaintiff's trademark was likely to deceive, cause confusion, or result in mistake, including towards Plaintiff's current and prospective customers and/or Plaintiff's marketable client base.

WHEREFORE, Plaintiff seeks immediate and permanent injunctive relief precluding and enjoining Defendants from any further unauthorized use of Plaintiff's trademark or brand, Technology or System, and further seeks damages to include disgorgement of any profits earned by Defendants, and any further damages caused by Defendants to be proved at trial.

## COUNT XXIII
## TRADEMARK DILUTION UNDER FLORIDA STATUTES § 495.15 AGAINST DEFENDANTS GERBER, MARCELLINO, GARDI, AND ENSIDA PARTNERS

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

203.    Plaintiff is the owner of the Ensida Energy trademark that is famous in the state of Florida as set forth in Florida Statutes § 495.151.

204.    Plaintiff had ownership rights to the Ensida Energy brand, website, and marketing materials through its actual and continuous use in commerce.

205.    Plaintiff has ownership rights in the Ensida Energy Technology and System along with the exclusive manufacturing, sale, and production rights of the Technology and System.

206.    The Ensida Energy brand, website, and marketing materials are inherently distinctive and have acquired distinctiveness through Ensida's use of the brand on its website and through promotional and marketing materials throughout the State of Florida, and nationwide.

207.    Ensida Energy Technology and System are inherently distinctive throughout the State of Florida, as Plaintiff is the sole producer and manufacturer of the System.

208.    Defendants have and/or are attempting to misuse Plaintiff's Ensida Energy trademark in commerce which is likely to cause dilution of the distinctive quality of the Ensida Energy brand as provided in § 495.151.

209.    Defendants willfully intended to trade on Plaintiff's reputation and to cause dilution of Plaintiff's use and recognition as the Ensida brand.

WHEREFORE, Plaintiff requests an immediate and permanent injunction precluding and/or enjoining Defendants from such use, display, manufacture, or sale, of any Ensida brand,

products, including the System and Technology, to further include payment of all profits derived from and/or all damages suffered by reason of Defendants' wrongful manufacture, use, display, or sale of the Ensida brand and/or products, and to pay the costs of this action.

## COUNT XXIV
## VIOLATION OF WIRE AND ELECTRONIC COMMUNICATIONS INTERCEPTION ACT, 18 U.S.C. § 2511(1)(a) AND 2511(1)(d)

Plaintiff reincorporates and repleads Paragraphs 1 through 86 of its Complaint as though fully set forth herein.

210.    Defendants Gerber, Gardi, and Marcellino have intentionally intercepted, endeavored to intercept, and/or procedure Plaintiff's electronic emails and company emails, asserted control over Plaintiff's company emails including sending and receiving Plaintiff's company emails without Plaintiff's authorization or consent, and otherwise excluded and/or severed Plaintiff's access to or control over its own email accounts and/or emails.

211.    Pursuant to 18 U.S.C. § 2520, Plaintiff is entitled to an immediate injunction precluding Defendants' improper interception and/or use of Plaintiff's emails and company email server, damages, including punitive damages, and its attorney's fees and costs.

WHEREFORE, Plaintiff seeks judgment against Defendants Gerber, Gardi, and Marcellino for preliminary and permanent injunctive relief, compensatory and punitive damages, and its attorney's fees and costs.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 28th day of February, 2019.

WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC

*/s/ Lawrence E. Burkhalter*
Lawrence E. Burkhalter
Florida Bar No. 186104
Alexander Heydemann
Florida Bar No. 0111544
2601 S. Bayshore Dr., Ste 1500
Miami, FL 33133
lburkhalter@wwhgd.com
aheydemann@wwhgd.com
T. 305-455-9500
F. 305-455-9501
*Counsel for Plaintiff*

## **VERIFICATION OF PLAINTIFF**

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged

herein are true to the best of my knowledge and belief.

BY: _____

Troy Eakins, as CEO and Managing Member, Ensida Energy AFS, LLC

Dated:

_____

.

Under penalty of perjury, I declare that I have read the foregoing, and the facts alleged herein are true to the best of my knowledge and belief.

BY:

Troy Eakins, as CEO and Managing Member, Ensida Energy AFS, LLC

Dated:

2/28/2019

-52-